IN RE ESTATE OF ARTHUR V. RICHARDSON, deceased.

LEE FORREST RICHARDSON, claimant-appellee, v. GERTRUDE RICHARDSON, administratrix of estate of Arthur V. RICHARDSON, appellant.

GEORGE F. RICHARDSON, claimant-appellee, v. GERTRUDE RICHARDSON, administratrix, appellant.

No. 49462.

(Reported in 93 N.W.2d 777)

DECEMBER 16, 1958.

Bailey C. Webber, of Ottumwa, for appellant.

Jones, White & Johnson, of Ottumwa, and C. H. Updegraff, of Sigourney, for claimants-appellees.

PETERSON, J.—F. P. Richardson died intestate on July 23, 1905, a resident of Keokuk County. He left surviving him his wife, Louisa C., three sons, Arthur V., George F., and Lee Forrest, and one daughter, Nora B. Martin. At the time of his death he was the owner of a farm of 180 acres and owned an undivided one-half interest in another farm of 125 acres. His sons owned the other one half. The widow and three sons continued to maintain the farming operations. They did not farm jointly, but each farmed a separate tract in accordance with mutual agreement as to allocation of acreage as between the four parties.

September 23, 1925, the widow and three sons entered into written settlement agreement as to items owing by Arthur V.

Richardson to the widow and the other two sons in connection with Arthur's purchase of his share in the 125 acres and in connection with rentals owing by him. In settlement of all accounts to date Arthur owed his mother $5773.80. He owed his brothers Lee Forrest and George F. each $3849.20. As an evidence of the amounts due his mother and two brothers he executed promissory notes payable in ten years with interest at 6% per annum.

The notes were not paid at their expiration and on August 29, 1949, the three sons, together with two children of Nora B. Martin, the daughter who had died in the meantime, entered into a written extension agreement as to the three notes.

Louisa C. Richardson died intestate January 17, 1939, and her son, L. F. Richardson, also known as Lee Forrest, was appointed administrator of her estate. Her heirs were the three sons, and four children of the daughter, Nora B. Martin, deceased.

The estate of Louisa C. Richardson remained open for some years and prior to the filing of the claims involved in this case, L. F. Richardson resigned as administrator and Frank Borough was appointed.

November 23, 1953, Arthur V. Richardson died intestate. He left no children or lineal descendants, but left his wife, Gertrude, surviving him. She was appointed administratrix of his estate.

Arthur had not paid the three notes he had given to his mother and two brothers, and after his estate was opened the administrator of Louisa's estate and George F. and Lee Forrest Richardson each filed claims in his estate on the notes executed by him to each of them, together with accrued interest.

In connection with the claim of Louisa C. Richardson's estate the administratrix of the estate of Arthur V. Richardson, deceased, filed answer and amendment, alleging eleven items of defense. She also filed answers to claims of George F. and Lee Forrest Richardson.

The claim in the Louisa C. Richardson estate was tried and the jury returned a verdict in favor of the estate of Arthur V. Richardson, deceased.

After the case was tried, Gertrude Richardson, as administratrix of the estate of Arthur V. Richardson, deceased, filed a

second amendment to her answer to the claims of George F. and Lee Forrest Richardson. She made further defensive allegations as follows: 1. That the three claims were all prepared by the same attorneys, and as a result of conferences and consultations between said attorneys and Lee Forrest and George. 2. That the obligation of the estate of Arthur V. Richardson to the three claimants is based on the original accounting agreement, and the extension agreement, rather than upon the promissory notes. 3. That in the estate of Louisa C. Richardson the real party in interest is not Frank Borough, administrator of her estate, but the parties in interest are, at least to the extent of two thirds of the claim, the said George F. and Lee Forrest Richardson. 4. That both Lee Forrest and George F. were voluntarily present in the courtroom at the time of the trial on the claim of Louisa C. Richardson estate. They were witnesses in the case and counseled and advised with the attorneys during the progress of the trial.

Appellant contends that by reason of said allegations in the second amendment to answers in the two claims the decision as to the Louisa C. Richardson estate claim is res judicata as to such claims. Appellant also alleges the claims are estopped by the judgment rendered in the claim which was tried.

Both Lee Forrest and George F. filed motion to strike the second amendment to answer filed by Gertude Richardson as administratrix. The trial court sustained the motions.

In accordance with R. C. P. 332 this court granted authority to Gertrude Richardson, administratrix, to appeal from the interlocutory ruling. She has appealed.

I. The principle of res judicata is well established in our jurisprudence. The general theory is to avoid duplication of litigation under certain established rules. If a litigant has had his day in court he is not entitled to a second day. The doctrine has had judicial attention so often that definite rules have been developed. In fact, the fundamental rules are rather simple. At times the application to the facts becomes difficult. 30 Am. Jur., Judgments, section 161 (now section 324, 30A Am. Jur.) states the situation as follows:

"* * * it has been declared that when a case lies hard by the line of cleavage between what is and what is not res judicata,

it may be a nice question to determine on which side of the line the case falls."

The test as to whether or not the principle of res judicata is present, to become effective in connection with a previous case, is: 1. Same parties, or parties in privity. 2. Same cause of action. 3. Same issues. 30A Am. Jur., Judgments, section 324; 50 C. J. S., Judgments, section 592; School Twp. of Bloomfield v. Independent School District of Castalia, 134 Iowa 349, 112 N.W. 5; McCullough v. Connelly, 137 Iowa 682, 114 N.W. 301, 15 L. R. A., N. S., 823; Kunkel v. Eastern Iowa L. & P. Cooperative, 232 Iowa 649, 5 N.W.2d 899; State ex rel. Howson v. Consolidated School District, 245 Iowa 1244, 65 N.W.2d 168.

As a general definition 30A Am. Jur., Judgments, section 324, states: "[Briefly stated], the doctrine of res judicata * * * is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

We have defined the doctrine in the recent case of State ex rel. Howson v. Consolidated Sch. Dist., supra, at page 1248 of 245 Iowa, page 171 of 65 N.W.2d, as follows: "The doctrine of res judicata is well established and it may exist under two situations: (1) As a bar to a second action upon the same cause of action, and (2) as a bar to relitigation of particular facts or issues in a different cause of action. But in both instances the parties thereto must be identical or in privy thereto."

II. Obviously, in the case at bar, the parties are not the same. The case tried was claim of administrator of Estate of Louisa C. Richardson, deceased, v. Estate of Arthur V. Richardson, deceased. As far as parties it becomes a question as to whether or not George and Lee Forrest are privy to the estate of their mother. We defined "privity" in case of Leach v. First National Bank, 206 Iowa 265, 270, 217 N.W. 865, 868, using following language:

"Privity is said to be a mutual or successive relationship

to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he is in privity, it must appear that, at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication; for, *if the right was acquired by him before the adjudication, then the doctrine cannot apply.*" (Emphasis ours.)

See also White v. Peterson, 222 Iowa 720, 269 N.W. 878; State ex rel. Weede v. Bechtel, 239 Iowa 1298, 1322, 31 N.W.2d 853, 866, 8 A. L. R.2d 1162.

In the case last-cited we quoted with approval a very brief definition which was evolved from many cases both in and outside our jurisdiction as follows: " 'Privity' is defined to be mutual or successive relationship to the same rights of property * * * and accrued subsequent to the commencement of that action."

█ It will readily be observed that George and Lee Forrest Richardson are not in privity as to their claims, with the holder of the claim which was tried. The cardinal rule is that in order to be considered in privity the rights of the party must accrue subsequently to the commencement of the previous action. In addition to cases above-cited as to this theory see also Hawkeye Life Insurance Co. v. Valley-Des Moines Co., 220 Iowa 556, 562, 260 N.W. 669, 673, 105 A. L. R. 1018. In said case we stated: "It is also another well-settled rule that, in order to make such judgment or decree binding, the rights of the party sought to be bound must accrue *subsequently to the commencement* of the suit. * * * *One is not privy to a judgment where his succession to the rights of property thereby affected occurred previously to the institution of the suit.*" (Emphasis ours.)

Again in Tutt v. Smith, 201 Iowa 107, 114, 204 N.W. 294, 297, 48 A. L. R. 394, the court said: "It is contended that appellant is bound by the adjudication in the action brought by appellee against Herst. We think the contention is without merit. Passing, for the moment, the question of her intervention in the action, appellant was not in privity with Herst. *She acquired her right before the commencement of that action.*" (Emphasis ours.)

The causes of action and rights of George and Lee Forrest Richardson are based on the two promissory notes executed and delivered to them on September 23, 1925, and extended on August 29, 1949, both dates long before the filing of the Louisa C. Richardson estate claim in the estate of Arthur in 1953.

Appellant contends some phase of res judicata is established by the fact that George and Lee Forrest Richardson are heirs in the estate of their mother, Louisa C. Richardson, deceased. The only manner in which this theory could be effective would be if such fact established them as privies to the parties in the previous action. This question has been before us. If parties are owners of separate causes of action which are similar in nature as to proof to be offered, a condition of privity is not necessarily created. Coleman v. Bosworth, 180 Iowa 975, 164 N.W. 238; Betz v. Moore-Shenkberg Grocery Co., 197 Iowa 1348, 199 N.W. 254.

In Coleman v. Bosworth, supra, at page 984 of 180 Iowa, the court said: "Nor is privity established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts."

In Betz v. Moore-Shenkberg Grocery Co., supra, at page 1352 of 197 Iowa, the court said: "The mere fact that Bryant and appellee were interested in defeating separate actions based upon the same claim of appellant by proof of the same facts does not make them privies."

III. One of the rules with reference to res judicata is that the two actions must be based on the same cause of action. In the case already tried in the Louisa C. Richardson estate and in the two cases of George and Lee Forrest Richardson we have three causes of action based upon three promissory notes. Frank Borough, administrator, filed a claim based on a note in the amount of $5773.80, and interest. George and Lee Forrest Richardson are each the owners of a note in the amount of $3849.20, and have each filed claims on the basis of said note, plus interest.

It is the contention of appellant that by reason of the written settlement agreement between the parties, dated September 23, 1925, the same date as the notes, the situation constitutes only one cause of action. The agreement was a memorandum

284

stating in writing the figures of settlement between the parties. It is true that normally when parties are working out settlements involving a large number of items they add and subtract their figures and finally agree verbally or by written memorandum that each owes a certain amount to the other. One party then executes his promise to pay such amount in the form of a promissory note. In the instant case a long summary of all detailed items involved in the settlement appears in the record, showing the items of debit and credit. They consist of one hundred sixty-two separate items. The fact that the parties executed a written memorandum of agreement showing the result of such computation does not create such agreement between the parties as a substitute for the promissory notes.

Res judicata is not established by the fact that several persons may be interested in the same question or in proving part or all of the same facts in the trial of the cases. Coleman v. Bosworth, Betz v. Moore-Shenkberg Grocery Co., Tutt v. Smith, all supra; 50 C. J. S., Judgments, sections 652, 674.

A helpful general statement as to this question appears in 50 C. J. S., Judgments, section 652, page 97: "Undoubtedly the subject matter involved in the two actions must be the same, for otherwise there could not be an identity of the causes of action; *but the same transaction or state of facts may give rise to distinct or successive* causes of action, and a judgment on one will not bar a suit on another * * *. Therefore a judgment in a former suit, * * * and relating to the same subject matter, is not a bar to a subsequent action, *when the cause of action is not the same.*" (Emphasis ours.)

Also see 50 C. J. S., Judgments, section 674, pages 120, 121: "Causes of action which are distinct and independent, *although growing out of the same contract, transaction, or state of facts* * * * may be sued on separately, and the recovery of judgment for one of such causes of action will *not* bar subsequent actions on the others." (Emphasis ours.)

IV. In the answer filed by Gertrude Richardson, administratrix of the estate of Arthur V. Richardson, deceased, she pleaded eleven allegations of defense. The trial court submitted only four to the jury. In our consideration of the issues to be

effective as to the case tried and the claims of George and Lee Forrest, the issues submitted to the jury are controlling.

The four questions submitted were: 1. No consideration. 2. Existence of a confidential and fiduciary relationship as between Arthur and the other parties as to the agreement of settlement and as to the promissory note executed September 23, 1925, and that the agreement and note were secured under undue influence, pressure or duress as to Arthur. 3. Existence of the same confidential and fiduciary relationship between the parties to the extension agreement executed August 29, 1949, together with similar instructions as to undue influence, pressure or duress. 4. The existence of a conspiracy between the mother and three sons to defeat the rights of Gertrude in the estate of her deceased husband.

At this point and before consideration of each of the above issues it is advisable that we consider the effect of the general verdict of the jury.

The evidence produced at the trial of the case does not appear in the record. We assume all parties agreed it was not necessary as the issues involved pertain only to questions of law. This assumption is correct, except the evidence might have been of some assistance to this court in connection with an analysis of the issues in the case.

In view of the general verdict of the jury in favor of defendant we are unable to determine as to what issues were given special consideration by the jury; whether one or all of the issues involved produced determination of the case in favor of defendant; and whether or not the issues considered pertained to the mother alone.

This becomes important in consideration of the question of res judicata because it creates such doubt as between the issues actually considered by the jury in the case tried, and the issues in the claims of George and Lee Forrest, that to deny them their day in court is eminently unfair. Griffith v. Fields & Bryant, 105 Iowa 362, 75 N.W. 325; Eckles v. Des Moines Casket Co., 152 Iowa 164, 130 N.W. 113; Matson v. Poncin, 152 Iowa 569, 132 N.W. 970, 38 L. R. A., N. S., 1020; 30 Am. Jur., Judgments, sections 282, 283 (now sections 465, 466, 30A Am. Jur.).

In Matson v. Poncin, supra, at page 576 of 152 Iowa, we considered the subject as follows: "If the record be construed most favorably to plaintiff, there were three defenses, any one of which would have been sufficient, and the court in dismissing the suit failed to indicate on which the decision was based. All the defenses are not presumed to have been sustained. * * * in the absence of any showing as to which defense prevailed, the dismissal cannot avail as a plea of estoppel. [Citations] In such a case it is pure matter of conjecture as to what issue was determined. It is the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment." (Citations)

In Griffith v. Fields & Bryant, supra, at page 366 of 105 Iowa, the court said: "* * * 'if it appears that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was litigated, and upon which the judgment was rendered,—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.'"

30A Am. Jur., supra, section 465 discusses the subject in the following definite language: "In applying the doctrine of res judicata, the prior judgment is presumed to have been confined to the issues before the court. Where a judgment sought to be used as a basis for the application of the doctrine of res judicata was rendered in an action involving several issues of fact, and the entry recites a finding on one issue which compels a judgment for the defendant and is silent as to the rest, there is no presumption that they have been passed on. * * *. [Section 466 states]: The general rule is that a person relying upon the doctrine of res judicata as to a particular issue involved in the pending case bears the burden of introducing evidence to prove that such issue was involved and actually determined in the prior action, where this does not appear from the record. Under this view, it must clearly appear from the record in the former cause, or by proof by competent evidence consistent therewith, that the matter as to which the rule of res

judicata is invoked as a bar was, in fact, necessarily adjudicated in the former action."

We will now consider the issues involved in the four instructions heretofore listed.

1. The first issue submitted to the jury was "no consideration." If the jury considered this issue in connection with its discussion, the fact that it held against claimant on this point is not conclusive as to the two claims involved herein. A jury could hold there was no consideration in the mother's estate because of other circumstances involved between her and her son, and yet that there was consideration as to the notes owned by the two brothers.

2 and 3. The trial court instructed as to the original agreement, note and extension agreement that one of the contentions of Gertrude Richardson, administratrix, in defense of the claim of Louisa C. Richardson estate, was the existence of a confidential or fiduciary relationship. The court instructed as to the heavy burden of proof resting on claimant, under such circumstances, to show by a preponderance of the evidence that the transaction was just, fair and equitable.

There is no allegation in the answer or amendments, in any of the three claims, as to such defense. There is an allegation as to undue influence, pressure or duress exercised upon Arthur. This question was submitted in the confidential and fiduciary relationship instructions. Without any basis in the pleadings as to defense of such relationship it should not have been submitted to the jury. It places on claimants a heavier burden than justified. However, when the cases involved in this appeal are tried the confidential and fiduciary relationship part of these instructions should not be included.

As far as this appeal is concerned the important point is that an issue was submitted to the jury which cannot be submitted in George's and Lee Forrest's trials, in the absence of allegations in the pleadings to support the issue.

4. The instruction as to this issue pertained to the existence of a conspiracy between the mother and the three sons to defeat the rights of Gertrude in the estate of her deceased husband. We have previously discussed the effect of a general verdict as to the issues involved. Maybe the jury took this fourth issue

into consideration; maybe it did not. At any rate, we have no basis from the record to hold that this issue was considered by the jury and, therefore, would not be justified in holding George and Lee Forrest estopped by reason of res judicata as to this issue.

V. Appellant alleges that because George and Lee Forrest Richardson had the same attorneys as the Louisa C. Richardson estate; were witnesses in the trial; and present in the courtroom during the trial, this constituted res judicata as to their claims. We have held in several cases that if a person controls an action, such action becomes res judicata as to a claim later made against such controlling person. Montgomery v. Alden, 133 Iowa 675, 108 N.W. 234, 119 Am. St. Rep. 648; Canal Construction Co. v. Woodbury County, 146 Iowa 526, 121 N.W. 556; Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 65 A. L. R. 1125; In re Estate of Lyman, 227 Iowa 1191, 290 N.W. 537; Matson v. Poncin, supra.

The measure of control in the cited cases is far in excess of the actions of George and Lee Forrest in the trial of their mother's claim. We will examine the case of Hoskins v. Hotel Randolph Co., supra, as an example of the distinction. In that case plaintiff sued Hotel Randolph Company for injuries suffered in an elevator accident. The hotel company notified Otis Elevator Company as to the claim, and the suit, alleging the injuries were caused through defect in the elevator. To this notice the Otis Company replied that it would appear and defend through its own attorneys. It did appear and defended the action in the name of the hotel company. Judgment was rendered for plaintiff. Motion was then filed that the judgment be entered against Otis Company. The court said at page 1159 of 203 Iowa: "The principal question argued is whether the Otis Elevator Company was in court or a party to any issue involving its liability. It was in fact in court, though not in its own name. In substance, it was a party. It had its day in court upon every question litigated. It had the right of appeal. It was bound by the judgment, and cannot relitigate the questions determined by it."

This is a different situation from the case at bar. There is no evidence in the record that George and Lee Forrest con-

trolled the trial of the claim of their mother. There is no evidence they hired the attorneys. The fact that the same attorneys appeared in connection with all three claims is not a controlling factor. Coleman v. Bosworth, supra; Goodnow v. Stryker, 62 Iowa 221, 14 N.W. 345, 17 N.W. 506.

They were necessarily witnesses in the case because of their knowledge of the case. Both their mother and brother Arthur had departed this life. This necessitated their presence in the courtroom when the case was tried, and also necessitated conferences with the attorneys for claimant.

We have held in Scott v. Nesper, 194 Iowa 538, 188 N.W. 889, that the presence of a person at a trial as a witness is not sufficient to cause an adjudication as against such person. See also Lee v. Independent School District, 149 Iowa 345, 353, 128 N.W. 533, 535, 37 L. R. A., N. S., 383. In this case the court said: "The only actual connection which the parties represented by plaintiff are alleged to have had with the litigation between Ries and the officers of this defendant is that resulting from the fact that one of the members of each of the firms now represented by plaintiff *was called as a witness and testified in behalf of the defendants* in that suit in relation to the validity of the contracts involved, and that *each of said witnesses was present during a part or all of the trial* of said case and fully cognizant of the proceedings therein. * * * *The proposition is manifestly unsound and unreasonable.* Equally without support in any adjudicated case to which our attention has been called is the contention for appellee that one who is cognizant of litigation, the result of which may affect his interests, *and is present at the trial, will be bound by the result."* (Emphasis ours.)

A somewhat comprehensive and helpful statement with reference to the question appears in 139 A. L. R. 18, as follows: "Many of the courts, including the United States Supreme Court, have taken the view that while such judgment is res judicata for or against such person where he has control over the litigation, it is not res judicata or conclusive where the element of 'control' or 'right of control' is lacking, although such person has rendered casual or sporadic assistance, by way of paying or contributing to the payment of the costs or expenses of the litigation, engaging counsel for the prosecution or defense

of the action, participating in the trial of the action through such counsel or otherwise, etc., if the party to whom such assistance is rendered himself retained control over the litigation."

We hold there is not sufficient evidence in the record nor allegations in the second amendment to answer filed by administratrix of estate of Arthur V. Richardson, deceased, to indicate control of the mother's action by her two sons to the extent that the action becomes res judicata as to the claims of George and Lee Forrest.

VI. In addition to the contention of appellant that the decision in the estate of Louisa C. Richardson, deceased, was res judicata as to the claims of George and Lee Forrest, appellant also contends that said two claimants are "estopped by judgment" as to the presentation and trial of their claims.

We have at times considered the two theories as somewhat identical. In case of Hawley v. Davenport, R. I. & N. W. Ry. Co., 242 Iowa 17, 22, 45 N.W.2d 513, 516, this court through Justice Smith made a brief analysis of the situation. "We are not interested here in the technical distinction sometimes made between the terms res judicata and estoppel by judgment, or between estoppel by judgment and estoppel by verdict. * * * If plaintiff is barred or precluded from relitigating the question of his freedom from contributory negligence—the issue already adjudicated against him in the Federal case—it can make little difference to him by what name the lethal doctrine is called. It has been said a plea of res judicata is nothing more than a plea of estoppel. Consolidation Coal Co. v. Hall, 296 Ky. 390, 177 S.W.2d 150, 151. Whether this be true is immaterial since the sustaining of either operates as a bar to further litigation of an issue already judicially determined."

However, in previous decisions we have also held there is some distinction between an adjudication and an estoppel to litigate issues previously litigated. Matson v. Poncin, supra; Smith Lumber Co. v. Sisters of Charity, 146 Iowa 454, 125 N.W. 214; Citizens State Bank of Panora v. Snyder, 181 Iowa 11, 162 N.W. 6; King City, Missouri, for Use and Benefit of U. S. etc. Co. v. Southern Surety Co., 212 Iowa 1230, 238 N.W. 93; Band v. Reinke, 230 Iowa 515, 298 N.W. 865; Kunkel v.

Eastern Iowa L. & P. Cooperative, supra. In the last case we cited with approval from Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195, the following quotation at page 658 of 232 Iowa, page 903 of 5 N.W.2d: " 'It is a finality [the judgment] as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue *or points controverted*, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action.' "

In the case at bar there are no issues or points controverted which can reasonably be held to constitute estoppel by judgment as to the claims of George and Lee Forrest Richardson. We have discussed the issues submitted by the court to the jury in Division IV. The statements appearing in that Division apply equally to estoppel by judgment. Repetition is unnecessary.

We sustain the ruling of the trial court in striking the two amendments, and affirm the case.—Affirmed.

All JUSTICES concur.